UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLIFTON ESKRIDGE,

                Plaintiff,

     v.

NUCOR STEEL SEATTLE, INC.,

                Defendant.

CASE NO. C20-1393 MJP

ORDER DENYING MOTION TO REMAND

This matter comes before the Court upon Plaintiff's Motion to Remand.  (Dkt. No. 7.) Having reviewed the Motion, the Response (Dkt. No. 13), the Reply (Dkt. No. 15), and all related papers, the Court DENIES the Motion.

**Background**

Plaintiff, Clifton Eskridge, is a 62 year-old, disabled, African American man who worked for Defendant Nucor Steel Seattle for 21 years until he was terminated in April 2019.  (Dkt. No. 7; Dkt. No. 9, Declaration of Clifton Eskridge ("Eskridge Decl."), ¶ 1.)  Plaintiff began working for a new employer just a few weeks later.  (Id. ¶ 2.)

On August 24, 2020, Plaintiff filed a complaint in King County Superior Court alleging that he was discriminated against based on his age, disability, and race in violation of the Washington Law Against Discrimination.  (Dkt. No. 1, Ex. 1 ("Compl.").)  Plaintiff seeks damages for "past and future loss of wages and benefits," compensation for "the emotional distress caused by Nucor's unlawful treatment," and an award of damages pursuant to RCW 49.60.030 for his legal expenses.  (Id. at 3.)  On September 21, 2020 Defendant removed the action to this Court on the grounds of diversity jurisdiction.  Plaintiff is a resident of the State of Washington and Defendant asserts that Nucor Seattle is a division and wholly owned subsidiary of Nucor Corporation headquartered in Charlotte, North Carolina and incorporated in Delaware. (Dkt. No. 1, ¶ 7(b)-(c); Ex. 1, ¶ 1).)  Defendant also asserts that the amount in controversy exceeds $75,000, although the Complaint does not seek a specific number in damages.

Plaintiff now challenges the Court's jurisdiction, arguing that neither the amount in controversy nor diverse citizenship requirements have been met.  (Dkt. No. 7.)

## Discussion

### I.    Legal Standard

The removal statute is strictly construed against removal jurisdiction, and the "strong presumption" against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  It is obligated to do so by a preponderance of the evidence.  Id. at 567.

### II.    Amount in Controversy

"Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, 'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional

1    threshold.'" <u>Chavez v. JPMorgan Chase & Co.</u>, 888 F.3d 413, 416 (9th Cir. 2018) (quoting

2    <u>Urbino v. Orkin Servs. of Cal., Inc.</u>, 726 F.3d 1118, 1121-22 (9th Cir. 2013)).  The amount in

3    controversy may include "damages (compensatory, punitive, or otherwise) and the cost of

4    complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes."

5    <u>Chavez</u>, 888 F.3d at 416.

6          Plaintiff seeks an award of damages to compensate him for "his past and future wages

7    and benefits." (Compl. at 3.)  In 2017, Plaintiff made $100,146.17 in gross compensation,

8    $98,834.71 in 2018, and $29,584.61 in the first few months of 2019.  (Dkt. No. 3, ¶¶ 6 8.)

9    It is therefore not speculative to assume that between April 2019 and the date of removal

10   September 21, 2020—more than 16 months later—Plaintiff would have earned more than

11   $75,000 in wages based on his annual salary.

12         Plaintiff argues that the amount in controversy calculation cannot include front pay

13   beyond the date when he began a new job several weeks after his termination.  (Dkt. No. 7 at 6.)

14   But in determining the amount in controversy, the Court does not consider possible defenses to

15   Plaintiff's damages, including whether Plaintiff's new employment should reduce his damage

16   award.  <u>Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka</u>, 599 F.3d 1102, 1108

17   (9th Cir. 2010) ("just because a defendant might have a valid defense that will reduce recovery to

18   below the jurisdictional amount does not mean the defendant will ultimately prevail on that

19   defense."); <u>Henningsen v. Worldcom, Inc.</u>, 102 Wash. App. 828 (2000) (noting that mitigation is

20   an affirmative defense under the WLAD).  The Court finds that Defendant has satisfied its

21   burden of demonstrating the amount in controversy is likely to exceed $75,000.

22   //

23   //

24

### III.    Nucor's Citizenship

For the purposes of diversity jurisdiction, a corporation is a citizen of every state in which it is incorporated and the state that constitutes the corporation's principal place of business.  28 U.S.C. § 1332(c)(1).

> [The] "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).

Plaintiff contends that Nucor Seattle's principal place of business is its Seattle office, the address Nucor Seattle provided to the Washington Secretary of State, Washington Department of Revenue, King County Recorder's Office, the King County Assessor's office, the Washington Department of Employment Security, and the United States Internal Revenue Services.  (Dkt. No. 8, Declaration of Sylvia Luppert ("Luppert Decl.") Ex. 1-5; Eskridge Decl., ¶¶ 1, 4.)

In response, Nucor rests entirely on the declaration of Human Resources Supervisor, Janet Ali, and a few exhibits listing company-wide policies.  (Ali Decl., Ex. 1-3.)  Ms. Ali contends that the most senior employees with Nucor Seattle report to Nucor Corporation's Executive Vice President, who is based out of Charlotte.  (Id., ¶ 6.)  Further, Nucor Seattle employees regularly visit Charlotte for meetings with Nucor Corporation's executive team, Nucor Corporation issues uniform personnel policies and approves all "site-specific policies" of Nucor Seattle, the compensation structure for Nucor Corporation's employees is governed centrally from Charlotte, Nucor Seattle is required to get approval from Charlotte before beginning capital expenditures, and Nucor Corporation controls employee benefit programs such

as the company health, 401(k), stock purchase, and tuition assistance programs.  (Id., ¶¶ 6-8, 10-13.)

Plaintiff argues that Nucor has submitted no corporate records such as directives from North Carolina concerning uniform corporate policies or approval of Nucor Seattle exceptions.  Where there is any uncertainty about federal jurisdiction, the Court must remand.  But Plaintiff does not contradict the relevant portions of Ms. Ali's declaration, instead arguing that Defendant should have provided additional support.  The evidence of jurisdiction is therefore not uncertain, even if anemic.  Ms. Ali's declaration establishes that Nucor is the "actual center of direction, control, and coordination."  Hertz, 559 U.S. at 92-93.

### Conclusion

The Court therefore finds that Defendant has established the necessary elements of diversity jurisdiction and the Motion to Remand is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 28, 2020.

Marsha J. Pechman
United States Senior District Judge